UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASH JANSSEN, | |
| Plaintiff, | Case No. 16-cv-10098 |
| v. | Judge John Robert Blakey |
| BRI HOLDING, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ash Janssen ("Plaintiff"), a Colorado resident, brings this diversity action against Defendant BRI Holding, LLC ("Defendant"), an Illinois corporation, to collect amounts purportedly owed under a written Promissory Note (the "Note"). Compl. [1]. On January 27, 2017, Plaintiff moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot. J. Plead. [18]. For the reasons explained below, Plaintiff's motion is granted.

**I.  Background**

Defendant executed the Note on or about September 30, 2014. Compl. [1] ¶ 8; Ans. [15] ¶ 8.[1] Under its terms, Defendant "unconditionally promises to pay" to the order of Plaintiff a principal amount of $2,500,000, plus accrued and unpaid interest at a rate of twenty percent per annum.[2] Compl. [1] Ex. A at 1.

---

[1] A copy of the Note is attached to Plaintiff's Complaint. Compl. [1] Ex. A.

[2] Under the Note, all interest is calculated "on the basis of actual days elapsed in a 365-day year." Compl. [1] Ex. A at 1.

1

Beginning in 2015, the Note required Defendant to make payments of accrued and unpaid interest on January 15, April 15, July 15, and October 15 of each calendar year. *Id.* The entire outstanding principal amount was due on or before the Note's maturity date, which is five years after the acceptance of the Note. *Id.* Failure to make a timely payment of principal or interest constitutes an "Event of Default," which allows Plaintiff to declare "the entire unpaid principal amount of [the] Note together with accrued interest" immediately due and payable. *Id*. at 2. Moreover, during the continuance of an Event of Default, the Note's interest rate increases to twenty-five percent per annum. *Id*. at 1.

Defendant failed to make the required interest payments on January 15, 2015; April 15, 2015; June 15, 2015; October 15, 2015; January 15, 2016; April 15, 2016; and July 15, 2016. Compl. [1] ¶ 13; Ans. [15] ¶ 13. On July 18, 2016, Plaintiff sent Defendant a demand letter notifying it of its failure to pay and declaring the entire outstanding balance immediately due and payable. Compl. [1] ¶ 15; Ans. [15] ¶ 15. Despite the demand letter, Defendant still failed to make its required interest payment on October 15, 2016. Compl. [1] ¶ 15, 17; Ans. [15] ¶ 15, 17. On October 27, 2016, Plaintiff filed suit in this Court. Compl. [1].

In its Answer to Plaintiff's Complaint, Defendant admits the material facts discussed above, but denies that Plaintiff is entitled to any payments of principal or interest. Ans. [15] 1. Rather, Defendant claims that the Note at issue was, in fact, "part of a larger transaction" in which Defendant acquired a seventy percent interest in Plaintiff's company, AAR Parent, LLC ("AAR"). *Id.* Defendant alleges

that as part of this larger transaction, the parties "contemplated" that Plaintiff would be paid back on the Note "solely from distributions from [Defendant's] equity interest in AAR." *Id.* Defendant avers that its interest in AAR—which constitutes its only asset—has since become worthless, leaving Defendant unable to repay the Note. *Id.* Defendant believes that Plaintiff assumed the risk of such default as part of the overall transaction. *Id.*

## II. Legal Standard

Rule 12(c) permits a party to move for judgment solely upon the pleadings. Fed. R. Civ. P. 12(c); *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). A motion for judgment on the pleadings "is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court may take judicial notice." *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp.,* No. 10-cv-1533, 2011 WL 1196894, at *2 (N.D. Ill. Mar. 29, 2011) (quoting *Cincinnati Ins. Co v. Contemporary Distrib., Inc.,* 2010 No. 09-cv-2250, 2010 WL 338943, at *2 (N.D. Ill. Jan. 26, 2010)). The pleadings consist of the complaint, the answer, and any written instruments attached as exhibits (here, the Note). *Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).

Generally, the Court reviews Rule 12(c) motions under the same standard as a motion to dismiss under Rule 12(b). *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). However, where, as here, a party

seeks to use a Rule 12(c) motion "to dispose of the case on the basis of the underlying substantive merits," the appropriate standard "is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chi.,* 994 F.2d 333, 336 (7th Cir. 1993); *United States Liab. Ins. Co. v. Sigmatek, Inc.*, No. 14-cv-1747, 2015 WL 801504, at *4 (N.D. Ill. Feb. 20, 2015). In these cases, the Court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party. *P-Americas, LLC v. Cent. States Se. & Sw. Area Pension Fund*, No. 13-cv-8808, 2014 WL 3858396, at *3 (N.D. Ill. Aug. 5, 2014). A motion will not be granted unless "no genuine issues of material fact remain to be resolved" and the moving party "is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

**III. Discussion**

**A. Article 3 Of The Illinois Commercial Code Applies**

Before reaching the merits of the parties' claims, the Court must first determine the applicable law. The parties agree that Illinois law governs, an understanding buttressed by the language of the Note itself. *See* Compl. [1] Ex. A at 5 ("THIS NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAW PRINCIPLES OF ANY JURISDICTION.").

In Illinois, negotiable instruments are governed by Article 3 of the Illinois Commercial Code (the "Code"), 810 ILCS § 5/1-101 *et seq*. The Code defines a "negotiable instrument" as, *inter alia*, "an unconditional promise or order to pay a

fixed amount of money, with or without interest or other charges described in the promise or order." *Id.* § 5/3-104. A promise or order is considered unconditional unless it states: (1) "an express condition to payment"; (2) "that the promise or order is subject to or governed by another writing"; or (3) "that rights or obligations with respect to the promise or order are stated in another writing." *Id.* § 5/3-106. A promise or order is not made conditional "because payment is limited to resort to a particular fund or source." *Id.*

In addition to being unconditional, a negotiable instrument also:

> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of any obligor.

*Id.* § 5/3-104.

Under the Note at issue here, Defendant "*unconditionally* promise[d] to pay" a principal amount of $2,500,000 (plus accrued and unpaid interest). Compl. [1] Ex. A at 1 (emphasis added). Although Defendant alleges that Plaintiff purportedly agreed to be paid solely from distributions from Defendant's equity interest in AAR, this alone does not make the promise or order to pay conditional. *See* 810 ILCS § 5/3-106. Moreover, the Note is payable "to the order" of Plaintiff on or before the

5

Note's maturity date, which is five years after the acceptance of the Note. Compl. [1] Ex. A at 1. Aside from the payment of money, the Note does not include any other undertaking or instruction to do any act. The Note, therefore, constitutes a negotiable instrument under Article 3.[3] *See In re W-S Assocs.*, No. 94-B-21227, 1996 WL 691347, at *7 (Bankr. N.D. Ill. Nov. 26, 1996); *Cole v. Davis*, 63 N.E.3d 946, 958 (Ill. App. Ct. 2016).

### B. Plaintiff Is Entitled To Enforcement Of The Note Unless Defendant Can Establish A Defense Or Claim In Recoupment

Article 3 provides:

> (a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person pursuant to Section 3-402(a).
>
> *(b) If the validity of signatures is admitted or proved and there is compliance with subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under Section 3-301, unless the defendant proves a defense or claim in recoupment.* If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the

---

[3] Even if this Court were to apply common law principles instead of the Code, as discussed *infra*, judgment for Plaintiff would still be appropriate.

6

plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

810 ILCS § 5/3-308 (emphasis added). Section 3-301 states:

*"Person entitled to enforce" an instrument means (i) the holder of the instrument,* (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

*Id.* § 5/3-301 (emphasis added). "Holder" is defined as, *inter alia*, "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 5/1-201(21)(A).

Here, the Note is payable to the order of Plaintiff and is in Plaintiff's possession. Compl. [1] Ex. A at 1. Plaintiff, therefore, is the holder of the Note and thus entitled to enforce it. Additionally, Defendant admits that it executed the Note and that a true and correct copy is attached to the Complaint. Ans. [15] ¶ 8. Plaintiff is accordingly entitled to payment unless Defendant can establish "a defense or claim in recoupment." 810 ILCS § 5/3-308; *see also Gen. Elec. Capital Corp. v. Kozil*, 149 F.R.D. 149, 153 (N.D. Ill. 1993).

### C. Defendant's Purported "Larger Transaction" And "Assumption of Risk" Theory Does Not Establish A Defense Or Claim In Recoupment

Defendant argues that judgment at this stage would be inappropriate because, under the terms of the larger transaction by which Defendant purportedly acquired a majority interest in AAR, the parties "contemplated" that Plaintiff would

7

be paid back on the Note "solely from distributions from [Defendant's] equity interest." Def.'s Ans. [15] 1. Defendant claims that this larger agreement "creates a genuine issue of material fact as to whether Plaintiff is entitled to relief at all, having assumed the risk of non-payment as part of the [t]ransaction." Def.'s Resp. Pl.'s Mot. J. Plead. [22] 2.

As a preliminary matter, the Court notes that affirmative defenses are pleadings and therefore subject to all pleading requirements of the Federal Rules of Civil Procedure. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Moreover, although the Seventh Circuit has not addressed the issue directly, this Court aligns itself with the clear majority of courts in this district that have applied the "plausibility" pleading standard articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-57 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to affirmative defenses. *See, e.g., Top Tobacco, L.P. v. Good Times USA, LLC,* No. 14-cv-8978, 2017 WL 395698, at *2 (N.D. Ill. Jan. 30, 2017) (Dow, J.); *People by Madigan v. CMK Investments, Inc.*, No. 14-cv-2783, 2015 WL 4038896, at *1 (N.D. Ill. June 30, 2015) (Alonso, J.); *Lincoln Gen. Ins. Co. v. Joseph T. Ryerson & Son, Inc.*, No. 14-cv-8446, 2015 WL 3819215, at *2 (N.D. Ill. June 18, 2015) (Leinenweber, J.); *but see Leon v. Jacobson Transp. Co.*, No. 10-cv-4939, 2010 WL 4810600, at *1 (N.D. Ill. Nov. 19, 2010) (Marovich, J.).

Thus, Defendant's assumption of risk defense must comply with Rule 8(a) by providing "a short and plain statement" of the nature of the defense that gives Plaintiff "fair notice" of what the affirmative defense is and the "grounds upon

which it rests." *Twombly*, 550 U.S. at 555. This is because affirmative defenses "serve as a platform for discovery, which could be very costly." *Top Tobacco*, 2017 WL 395698, at *4. It is important, therefore, "that plaintiffs are given fair notice of the basis for each defense to allow them to litigate the defenses as they would any other issue." *Id.*

Defendant's Answer hardly satisfies this standard. It simply repeats the same generic refrain: under the terms of the "larger transaction" by which Defendant purportedly acquired a majority interest in AAR, the parties "contemplated" that Plaintiff would be paid back on the Note "solely from distributions from [Defendant's] equity interest." Def.'s Ans. [15]. Such a statement may be "short," but is not sufficiently "plain" so as to give Plaintiff—or this Court—adequate notice of what is being alleged. Specifically, Defendant fails to explain the precise *nature* of the "larger transaction" or its supposed payment condition. Defendant alleges that the condition was "contemplated," but does not state whether the condition was ultimately agreed upon (rather than merely envisioned), nor whether the terms of that agreement were written or oral. This fails to provide Plaintiff with fair notice of the grounds upon which Defendant's assumption of risk defense rests.

Regardless, none of the alleged payment condition's possible forms—written, oral, or envisioned—affords Defendant legal relief. Section 3-117 of Article 3 governs the effect of other *written* agreements on a negotiable instrument. That section provides,

9

> [s]ubject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. To the extent an obligation is modified, supplemented, or nullified by an agreement under this Section, the agreement is a defense to the obligation.

810 ILCS § 5/3-117. At first glance, this provision appears to support Defendant's theory. Indeed, the Comments to § 3-117 even refer to the specific issue presented here:

> The separate agreement might be a security agreement or mortgage or it might be an agreement that contradicts the terms of the instrument. *For example, a person may be induced to sign an instrument under an agreement that the signer will not be liable on the instrument unless certain conditions are met.* Suppose X requested credit from Creditor who is willing to give the credit only if an acceptable accommodation party will sign the note of X as co-maker. Y agrees to sign as co-maker on the condition that Creditor also obtain the signature of Z as co-maker. Creditor agrees and Y signs as co-maker with X. Creditor fails to obtain the signature of Z on the note. Under Sections 3-412 and 3-419(b), Y is obliged to pay the note, but Section 3-117 applies.
>
> In this case, the agreement modifies the terms of the note by stating a condition to the obligation of Y to pay the note. . . . [A] subsequent attempt by Creditor to require Y to pay the note in violation of the agreement is a bad faith act. Section 3-117, in treating the agreement as a defense, allows Y to assert the agreement against Creditor[.]

*Id.* at cmt. 1 (emphasis added).

As Plaintiff points out, however, the Note at issue here explicitly states that Defendant "*unconditionally* promises to pay" Plaintiff, and it makes no mention of Defendant's interest in AAR. Compl. [1] Ex. A at 1 (emphasis added). Further, the Note contains an integration provision that states:

> **Entire Agreement.** This Note contains the complete and exclusive statement of agreement and understanding of the parties with respect to matters in this Note. This Note replaces and supersedes all prior written or oral agreements, statements, understandings and negotiations by the parties with respect to the matters covered by it.

*Id.* at 4.

The Comments to § 3-117 speak to the impact of such provisions on the Note's interpretation:

> The effect of merger or integration clauses to the effect that a writing is intended to be the complete and exclusive statement of the terms of the agreement or that the agreement is not subject to conditions *is left to the supplementary law of the jurisdiction pursuant to Section 1-103. Thus, in the case discussed in Comment 1, whether Y is permitted to prove the condition to Y's obligation to pay the note is determined by that law*.

810 ILCS § 5/3-117 cmt. 2 (emphasis added).

This Court, therefore, must analyze the consequence of a contemporaneous writing under Illinois common law. Under Illinois common law,

> [t]he general rule is that *in the absence of evidence of a contrary intention*, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract. This is true whether or not the instruments were executed simultaneously; if executed at different times as

11

parts of the same transaction they will be construed together.

*Mt. Hawley Ins. Co. v. Robinette Demolition, Inc.*, 994 N.E.2d 973, 982 (Ill. App. Ct. 2013) (emphasis added) (quotations omitted).

Here, although Defendant alleges that the Note was executed as part of a "larger transaction," in which the "parties contemplated" that Plaintiff "would be paid back on the Note . . . solely from distributions from [Defendant's] equity interest in AAR," Ans. [15] ¶ 1, the Note itself provides direct evidence of the parties' "contrary intention." *See Mt. Hawley*, 994 N.E.2d at 982. The Note's opening paragraph states that Defendant "*unconditionally* promises to pay" Plaintiff. Compl. [1] Ex. A at 1 (emphasis added). Moreover, the Note's integration clause proclaims that the Note "contains the complete and exclusive statement of agreement and understanding of the parties" with respect to matters in the Note, and "replaces and supersedes all prior written or oral agreements, statements, understandings and negotiations by the parties with respect to the matters covered by it." *Id.* at 4.

In short, the plain language of the Note belies Defendant's claim that the Note should be read in conjunction with, and contingent upon, the terms of Defendant's purported larger transaction with Plaintiff. Entertaining Defendant's claim, therefore, would run contrary to § 3-117 and require the Court to abandon its obligation to "give meaning and effect to every provision and not nullify provisions or render them meaningless." *Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 25 N.E.3d 1166, 1173 (Ill. App. Ct. 2015). The Court declines this invitation.

To the extent the supposed repayment condition was agreed upon orally, Defendant fares no better. Although, as noted above, Article 3 allows an instrument to be modified by a separate contemporaneous *writing* in certain circumstances, the Code "otherwise follows the parol evidence rule that prior or collateral *oral* agreements are inadmissible to contradict the express terms of a written instrument." *Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 100 (Ill. App. Ct. 1981) (emphasis added); *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 865 (7th Cir. 2013).

Equally meritless is the possibility that the payment condition was simply the product of the parties' subjective understanding. What "the parties to a written contract may have *understood* as to the meaning of the language used is not admissible in evidence. The intention or understanding of the parties, when there is a written contract in evidence, must be determined not from what the parties thought but from the language of the contract itself." *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. App. Ct. 1984) (emphasis added).

Finally, the Court notes that Defendant only seeks an "opportunity for discovery" in order to prove that, given the payment condition, Plaintiff assumed the risk of Defendant's default. *See* Def.'s Resp. Pl.'s Mot. J. Plead. [22] 4. Assumption of risk, however, is not a viable defense to a claim for breach of contract. *On Command Video Corp. v. Roti*, No. 09-cv-3130, 2010 WL 1752350, at *5 (N.D. Ill. Apr. 30, 2010); *Chamberlain Mfg. Corp. v. Maremont Corp.*, No. 90-cv-

13

7127, 1993 WL 535420, at *6 (N.D. Ill. Dec. 19, 1993). Defendant's request, therefore, is futile.

In short, even if the Court overlooks Defendant's deficient pleading, its proffered defense fails to create a genuine issue of material fact regarding Plaintiff's right to payment on the Note under Article 3. As such, Plaintiff is entitled to judgment as a matter of law. *Alexander v. City of Chi.,* 994 F.2d 333, 336 (7th Cir. 1993).

## IV. Conclusion

Plaintiff's Motion for Judgment on the Pleadings [18] is granted. Plaintiff requests judgment "in the amount of $3,616,780.84, reflecting the principal amount of the Note and accrued interest through October 15, 2016, plus interest after October 15, 2016 at the per diem rate of $1,712.33, and reasonable court costs and attorneys' fees." Pl.'s Mot. J. Plead. [18] 7. Although the principal amount of the Note ($2,500,000) is clear on its face, Plaintiff fails to explain how he arrived at his accrued interest figure, per diem rate, or October cut-off date. Plaintiff further omits specific amounts or substantiating documentation regarding his request for court costs and attorneys' fees. The parties, therefore, are instructed to meet and confer regarding the total amount of judgment given the Court's ruling. The parties shall file a joint status report explaining the outcome of the meet and confer and any outstanding disputes on or before June 16, 2017. Status hearing is set for June 22, 2017 at 9:45 a.m. in Courtroom 1725. Entry of Rule 58 judgment will be reconsidered at that time.

Date: May 15, 2017

ENTERED:

John Robert Blakey
United States District Judge